## ARTHUR W. NIXON v. STATE OF NEBRASKA.

FILED OCTOBER 18, 1912.    No. 17,546.

1. **Intoxicating Liquors:** ILLEGAL SALE: EVIDENCE. In a prosecution for the sale of spirituous and intoxicating liquor called whiskey, in violation of chapter 50, Comp. St. 1911, evidence that the liquor sold, without a license, to the prosecuting witnesses was intoxicating, that it looked like whiskey, and tasted like whiskey, is sufficient to sustain a conviction. *White v. State,* 88 Neb. 177.

2. ———: ———: INSTRUCTIONS. In such a prosecution, if the evidence is conflicting, the court should submit the case to the jury under proper instructions, and an instruction that "the law of Nebraska provides that all persons who shall sell any spirituous liquors or any intoxicating drinks without first having obtained a license for selling such liquors shall be deemed guilty of a misdemeanor" is without error.

3. ———: ———: ———. Other instructions examined, the substance thereof stated in the opinion, and *held* to be without error.

4. ———: ———: EVIDENCE. On the trial of such a case, it is not error to permit the state to introduce in evidence the federal liquor license issued to the defendant, where the sole objection to its introduction is that it was obtained from him by stealth.

ERROR to the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Edwin Falloon,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

BARNES, J.

The plaintiff in error, hereafter called the defendant, was tried in the district court for Richardson county on an information containing four counts, in each of which he was charged with the crime of selling spirituous and intoxicating liquors called whiskey without a license. He was found not guilty on the first two counts, and guilty

as charged in the third and fourth counts of the information. He was sentenced to pay a fine of $300 on each count, together with the costs of prosecution, and to stand committed until the fines and costs were paid. To reverse the judgment of the district court he has brought the case here by a petition in error.

Defendant's first contention is that the evidence is wholly insufficient to sustain the verdict. It appears that the third count of the information charged that defendant did, on or about the 26th day of March, 1911, in the county of Richardson, state of Nebraska, unlawfully and wilfully sell to one Robert Ankrom certain spirituous and intoxicating liquors, to wit, one gill of whiskey, without having obtained a license therefor. The abstract, record and briefs show that upon the trial Ankrom testified, in substance, that he was living in Barada on the 27th day of March, 1911, where he had always lived; that he was acquainted with the defendant, Arthur Nixon; that he did not remember whether he was in there on the 26th day of March of that year, but that he visited Nixon's place of business very frequently and frequently drank there. He said: "I can't say I remember of drinking whiskey. I can't tell what it was. If a man drank enough of it, it would intoxicate him. I didn't buy the drink. I drank in there with James Graham on or about the 1st of March. I can't say what I drank, but it was within the last 18 months. I drank with Al Davis. I don't think anybody paid for it. I don't remember what we called for. I don't remember the number. I don't think it was over four. I took one drink with Mr. Davis. I was satisfied with that. I took a drink with Al Davis. The drink was colored like whiskey. I didn't smell it. I tasted it, and it tasted like whiskey. I only took one drink. I suppose the graduate was half full. At the time I drank with Davis, Davis called me up and Nixon waited on me. I have not purchased within the last 12 months any liquor that looked like whiskey. It was the same color. I usually paid 10 cents for a drink. I never bought any by the

bottle. I never bought any by the jug. Within the last 12 months I think I have bought something that looked like whiskey and tasted like whiskey, and paid 10 cents for it. I never became intoxicated on it within the last 12 months." The witness also testified on cross-examination that he never bought any whiskey at Nixon's place of business within the last 18 months. "I don't know whether Nixon treated us or n it, but I don't think the drink was paid for, not that I kn ow of. I can't swear that this treat was whiskey." On r direct examination the witness further said: "This stu that I have been drinking at Nixon's place I would not swear it was whiskey. If one drank enough of it he might become intoxicated. I didn't get any of this stuff at Nixon's place in March of this year, nor April. I might of bought some in May. I don't remember the time of the month of May I bought it. I think, if I bought it at all, it was about the middle of the month. I called for medicine. I suppose he understood me. We went into the back room and took it from a bottle. It looked like one of those patent medicine bottles, a square bottle. Sometimes he poured it out, and sometimes I did. Sometimes I paid for it, and sometimes I didn't. I usually paid 10 cents. I didn't tell what particular ailment I wanted the medicine for. I can't tell the jury what it was. He gave me medicine for headache, for dyspepsia, for the appetite, an appetizer. It kind of braced a fellow up."

The fourth count of the information charged that the defendant, in the county of Richardson, and state of Nebraska, on or about the 28th day of March, 1911, did unlawfully and wilfully sell to one Albert Davis certain spirituous and intoxicating liquors, to wit, one gill of whiskey, without having first complied with the laws of the state of Nebraska, and obtained a license therefor. To support that count of the information Albert Davis testified, in substance, as follows: I live north, just across the line of Nemaha county. Was living there during the month of last March. I was in Barada nearly every day along through March, at least three times a

week. Am acquainted with Arthur Nixon, and have been in his place of business. I have purchased of him groceries, some hardware and drugs. On or about the 25th day of March I bought something I suppose was whiskey. It was red looking stuff. It was a poor article of stuff whatever it was. It tasted to me like it might have been whiskey, a poor grade of whiskey. Well, if a man would drink enough of it I suppose it would make him crazy. I bought this stuff of him. I paid all kinds of prices, from 10 cents up. I usually paid 10 cents a drink. When I bought it by the bottle I paid from 25 cents to $1, owing to the size I bought. When I got this liquor I called for booze. I drank with Bob Ankrom at the time he would not pay the assessment. We drank red-eye booze, and I paid for it. We drank it out of a small like glass, I think it was a wine glass, as well as I remember.

It appears, without dispute, that the defendant was engaged in the business of selling hardware, groceries and drugs in the village of Barada, in Richardson county, Nebraska, at the several times mentioned in the information. The defendant positively denied on oath that he sold any whiskey to Robert Ankrom or Albert Davis at any time within 18 months before the time alleged in the information. Defendant also produced three witnesses to impeach the testimony of Albert Davis, each of whom testified that on a certain day in a saloon conducted by one Hunker, while drinking with the defendant Nixon, and at his expense, Albert Davis said, in substance, that he never bought any whiskey of the defendant. Davis, however, denied that he had ever made such a statement.

The foregoing is the substance of the evidence on which the case was submitted to the jury. The probative effect of this evidence was a question for the jury, and, notwithstanding the witnesses for the state avoided stating in clear and direct language that they knew the liquor that they purchased of the defendant was whiskey, still the jury, taking into consideration their reluctance to testify against one who had thus favored them, might well have

concluded that the liquor was what one of the witnesses said seemed to be a poor quality of whiskey. In any event, in the light of this testimony, it cannot be said that the liquor was not intoxicating. We are therefore of opinion that the evidence was sufficient to sustain the verdict, and we would be invading the province of the jury to hold otherwise. *White v. State*, 88 Neb. 177.

Defendant also contends that the court erred in giving and refusing instructions. By the third instruction the court charged the jury that "the law of Nebraska provides that all persons who shall sell any spirituous liquors or any intoxicating drinks without first having obtained a license for selling such liquors shall be deemed guilty of a misdemeanor." It is argued that this instruction is erroneous because under its direction the jury could convict for the sale of spirituous liquors or any intoxicating drink. We think this instruction contains a fair statement of the law, as we understand it, and the district court did not err in giving it.

By the fourth instruction the court charged the jury as follows: "You are instructed that it is not necessary that any witness testify positively as to the particular name of the liquor. It is sufficient, if you are satisfied from all the facts and circumstances in evidence that the liquor so sold, if any, was intoxicating liquor of the kind generally known as whiskey. The name or lack of name given to such liquor is not material, if the kind and character of such liquor is shown by the evidence to be as alleged in the information." We think this instruction is correct, and is fairly within the rule announced in *White v. State*, *supra*.

At the request of the state, the court instructed the jury that the beverage commonly known as whiskey is an intoxicating liquor, and, if you believe from the evidence beyond a reasonable doubt that the defendant sold whiskey as charged in the information, your verdict should be guilty. The jury were also told in the same instruction that it was not necessary for the state to prove the com-

ponent parts of the beverage alleged to have been sold, or make a chemical analysis of the same; that it was sufficient if they were satisfied from the evidence beyond a reasonable doubt that the defendant sold the beverage commonly called and generally known as whiskey as charged in the information, and that the beverage so sold was intoxicating. From an examination of the authorities, both in this and other jurisdictions, we are satisfied that this instruction is without error.

Complaint is made because the court refused to instruct the jury that a conviction could not be had upon mere suspicion, however strong. An examination of the instructions given by the court upon his own motion, and the one requested by the defendant and given by the court, in which it was clearly stated that it was incumbent upon the state to prove beyond a reasonable doubt all the material allegations of any or all counts of the information; that the material allegations of the counts of the information are that the beverages charged as sold are whiskey; that they were sold, if at all, to the persons named in the information, and that any or all of the sales, if made, were made within 18 months next preceding the commencement of this prosecution (June 15, 1911); that the charge in the information that the sales were made without a license is material—obviated any necessity for instructing the jury that they could not convict the defendant upon mere suspicion. As we view the record, the case was fairly tried, and the instructions are without error.

Finally, it is contended that the court erred in permitting the state to introduce in evidence the federal liquor license issued to the defendant, because it had been obtained by the state by stealth. In *Younger v. State,* 80 Neb. 201, objection was made to the introduction of defendant's shoes, upon the ground that they were taken from him by force, and it was held that, where matters are offered in evidence on the trial of the case which are pertinent to the issue, they should be admitted, and the court will not take notice of how they are obtained. To

the same effect are *Geiger v. State*, 6 Neb. 545; *Russell v. State*, 66 Neb. 497; *Williams v. State*, 100 Ga. 511, 39 L. R. A. 269; 1 Bishop, New Criminal Procedure (4th ed.), secs. 210-212. As defendant cites no authority in support of this contention, and in view of the authorities above mentioned, we are of opinion that the receiving of the federal license in evidence presents no ground for a reversal of the judgment.

The evidence clearly shows that the defendant, in the back room of his store, in Barada, Richardson county, Nebraska, at or about the time charged in the information, sold intoxicating liquors, which the witnesses say looked and tasted like whiskey, to the persons charged in the information. It was admitted that he had no license to make such sales, therefore the judgment of the district court should be, and is,

AFFIRMED.