[Crim. No. 3784. Fourth Dist., Div. One. Apr. 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL JOHN HERRERA, Defendant and Appellant.

848

**COUNSEL**

Howard A. Muhleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**COUGHLIN, J.**—Defendant Herrera and a codefendant Rodriguez, were charged with the offenses of assault with a deadly weapon (Pen. Code, § 245), in count I, and discharging a firearm at a vehicle on a highway with intent to do great bodily injury (Veh. Code, § 23110), in count II; were tried by a jury; and were found guilty of both offenses. At the time of sentencing, upon motion of the district attorney because dual punishment was proscribed, the charge of discharging a firearm on a highway with intent to commit great bodily injury was dismissed. Both defendants were sentenced to imprisonment in the state prison. Defendant Herrera appeals.

On February 2, 1969, shortly before 10:30 p.m., defendant was driving a Chevrolet automobile on a state highway. His codefendant was seated next to him in the front seat. The latter's brother was in the rear seat. Over a distance of several miles the Chevrolet was driven behind and in a manner described as "tail-gating" a Ford automobile occupied by five women. On two occasions the driver of the Ford went to the side of the road to permit the Chevrolet to pass but, instead of passing, it continued to drive to the rear. The lights of the Chevrolet always were visible to the driver of the Ford although the distance between the two cars varied from time to time. In the course of this harassment, the occupants of the Ford heard a noise indicating something had struck the trunk of their car. When the driver of the Ford saw a sheriff's automobile parked on the side of the road she drove her car up behind it; saw the defendant's car pull up in back of her and then pull out, passing to her left; and, as the Chevrolet passed, she observed "a gentleman hanging out the window and a gun also out the window." There was a hole in the trunk of the Ford which appeared to have been made by a bullet. The occupants of the Chevrolet were apprehended and arrested. The codefendant Rodriguez testified he had a rifle with him in the front seat. While riding along the highway he held the gun outside the right door of the Chevrolet; two shots were fired, one accidently and the other at "signs"; and he was intoxicated. He denied shooting at the Ford

or any knowledge of its being on the highway. Defendant Herrera testified he was not "tail-gating" the Ford; was not following it; did not know of its being on the highway; and that he was intoxicated. The rifle purportedly had been used during the day for target practice.

The court instructed the jury respecting the elements constituting the two offenses charged; that an essential element of the offense of discharging a firearm on the highway was the specific intent to do great bodily injury; that intoxication was a fact the jury might consider in determining whether the specific intent existed; that a person who commits an act by accident, under circumstances showing no evil design, intention or culpable negligence, does not commit a crime; and on the law respecting aiding and abetting an offense.

Defendant contends the evidence does not support the conclusion he aided and abetted the offense of assault with a deadly weapon; the court erred in failing to instruct the jury "as to specific intent necessary to aid and abet"; and, under the instructions given, the jury was not advised they might consider evidence of his intoxication in determining his intent.

■ The evidence adequately supports the conclusion Rodriguez committed an assault upon the occupants of the Ford with a deadly weapon. This was a criminal offense. (Pen. Code, § § 240, 245.) His claim the shooting was accidental and was not directed at the Ford was rejected by the jury which was entitled to infer from the evidence he fired a shot into the Ford in the course of the harassment to which he and the defendant subjected the occupants of the Ford and that his intention was to do great bodily injury. The jury, by its verdicts of guilty on both offenses, found accordingly. The offense of assault with a deadly weapon requires proof only of an attempt to commit a violent injury upon the person of another; does not require proof an injury occurred; and is supported by an inference from proof a gun was fired in the direction of another. (*People* v. *Hood,* 1 Cal.3d 444, 448, 458, fn. 7 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Carmen,* 36 Cal.2d 768, 776 [228 P.2d 281]; *People* v. *McCoy,* 25 Cal.2d 177, 189, 192-193 [153 P.2d 315]; *People* v. *Morrow,* 268 Cal.App.2d 939, 949-952 [74 Cal.Rptr. 551]; *People* v. *Laya,* 123 Cal.App.2d 7, 16 [226 P.2d 157]; *People* v. *Ingram,* 91 Cal.App.2d 912, 914 [206 P.2d 36].)

■ It is a matter of note the term "violent injury" used in defining an assault is not synonymous with the term "bodily harm," but includes "any wrongful act committed by means of physical force against the person of another." (*People* v. *McCoy, supra,* 25 Cal.2d 177, 191.) ■ In the case at bench, the jury by its verdicts of guilty on both offenses found the gun was discharged with an intent not only to commit a "violent injury"

upon the occupants of the Ford, but also to inflict "great bodily injury" upon them.

■ A person present when a crime is committed who engages in conduct aiding and assisting the perpetrator with knowledge of the latter's criminal intent, aids and abets in its commission. (Pen. Code, § 31; *People* v. *Masters,* 219 Cal.App.2d 672, 679 [33 Cal.Rptr. 383].) ■ Whether a person has aided and abetted in the commission of a crime is a question of fact. (*People* v. *Morga,* 273 Cal.App.2d 200, 207 [78 Cal.Rptr. 120]; *People* v. *George,* 259 Cal.App.2d 424, 429 [66 Cal.Rptr. 442].)

■ In the case at bench the implied finding of the jury defendant aided and abetted his codefendant in the assault with a deadly weapon upon the occupants of the Ford automobile is supported by evidence showing defendant was the driver of the Chevrolet in which the codefendant was seated next to him; he drove that automobile for several miles in a manner harassing the occupants of the Ford; the rifle used to commit the assault was in the front seat with defendant and the codefendant; he must have seen the codefendant leaning out of the window of the automobile and discharging the rifle; and upon discovering the driver of the Ford was stopping behind a sheriff's automobile, he ceased his harassing maneuvers and fled. Defendant's claim he was intoxicated and for this reason did not know what was going on, in light of his driving activities, is ridiculous. The further claim the codefendant was shooting at signs and striking the Ford automobile was accidental, in light of the fact the shooting occurred at 10:30 o'clock at night, also is ridiculous. The evidence supports inferences establishing defendant and his codefendant jointly participated in a course of conduct the purpose of which was to harass the occupants of the Ford automobile and included shooting at them. (Gen. see *People* v. *Villa,* 156 Cal.App.2d 128, 135 [318 P.2d 828]; *People* v. *Mummert,* 57 Cal.App.2d 849, 855 [135 P.2d 665]; *People* v. *Wood,* 56 Cal.App. 431, 432 [205 P. 698].)

■ Although defendant contends the court erred in failing to instruct the jury "as to specific intent necessary to aid and abet," he did not request nor does he now indicate the contents of such instruction. Instead, he refers to the general rule a person may aid and abet the commission of a crime only if he acts with knowledge of the criminal purpose of the perpetrator. (*People* v. *Durham,* 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Masters, supra,* 219 Cal.App.2d 672, 679; *People* v. *Villa, supra,* 156 Cal.App.2d 128, 133-134; *People* v. *Etie,* 119 Cal.App.2d 23, 28 [253 P.2d 1069].) Apparently defendant contends the court should have instructed the jury "to aid and abet" a crime requires a specific intention to aid the perpetrator in the commission of the crime. Stated otherwise, defend-

ant apparently contends because to aid and abet the commission of a crime requires knowledge of the criminal purpose of the perpetrator, the court should instruct the jury an aider and abettor must specifically intend the commission of the crime.

The court gave two instructions in the premises, each of which contained the requirement the person charged as an aider and abettor must "knowingly and with criminal intent," aid the commission of the crime. The court also instructed the jury: "Where a person intentionally does that which the law declares to be a crime, he is acting with criminal intent"; and "An assault with a deadly weapon is an unlawful attempt, coupled with the present ability, to commit a violent injury upon the person of another with a deadly weapon." In substance, the jury was instructed if a person intentionally attempts, with a present ability, to commit a violent injury upon another he acts with criminal intent; and a person who "knowingly" and "with criminal intent," i.e., with intent to do "that which the law declares to be a crime" aids in the commission of the crime, is an aider and abettor. Considered as a whole the instructions are not subject to defendant's complaint. Furthermore, a person who "knowingly . . . aids the commission" of a crime has knowledge of the criminal purpose of the perpetrator and intends commission of the crime. The instructions given advised the jury of the applicable general principles of law.

Defendant asserts there is no proof he ever knew a crime was to be committed. If this were true the instructions on aiding and abetting would have eliminated him as an aider and abettor. The jury rejected his claim he did not know a crime was to be committed, and there was substantial evidence inferentially supporting the conclusion he not only knew a crime was to be committed but participated in the plan contemplating such commission.

Defendant's further contention the court erred in failing to instruct the jury evidence of intoxication might be considered in determining whether he had aided and abetted in the commission of the crime, also is without merit. In *People* v. *Hood, supra,* 1 Cal.3d 444, 448, the court held intoxication is not a factor material to a determination of the intent requisite to commission of the offense of assault with a deadly weapon. The rationale in support of this holding dictates the conclusion intoxication is not a factor material to a determination of the intent of a person who, as in the case at bench, aids and abets the perpetrator of an assault by participating conduct enabling its commission. Rodriguez, the codefendant, could not have fired at the Ford if Herrera, the defendant, had not driven the Chevrolet within firing distance. The crime could not have been committed without defend-

ant's participation. Under these circumstances, there is no reason why his intoxication should be considered in determining his criminal intent.

Even assuming evidence of the intoxication of a person charged as an aider and abettor generally is material to a determination whether he had knowledge of the criminal purpose of the perpetrator of the crime and it was error to fail to give such an instruction in the case at bench, the error was not prejudicial. The court instructed the jury: "in the crime of discharging a firearm at a vehicle, of which defendants are accused in Count 2 of the information, a necessary element is the existence in the mind of the defendants of the specific intent to do great bodily injury" and "If the evidence shows that the defendants or a defendant were intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if that defendant had such specific intent." (Italics ours.) It is not probable the jury would have found defendant not guilty of the offense of assault with a deadly weapon if it had been instructed evidence of his intoxication might be considered in determining whether he had knowledge of Rodriguez's criminal purpose because (1) the court instructed the jury the existence in the mind of the "defendants," not just one defendant, of the specific intent to do great bodily injury was a necessary element of the crime of discharging a firearm; (2) the court also instructed the jury if the evidence shows the "defendants or a defendant" were intoxicated at the time of the alleged offense, the jury should consider the state of intoxication in determining if that defendant had such specific intent; and (3) the jury, acting under the foregoing instructions, found both defendants guilty of discharging a firearm at a vehicle which implied a finding both defendants had the specific intent to do great bodily harm and their state of intoxication did not interfere with their ability to entertain that intent.

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.